## CITY OF TROY v ASLANIAN

Docket No. 97667. Submitted April 12, 1988, at Detroit. Decided
August 2, 1988. Leave to appeal applied for.

Joseph and Gail Aslanian purchased property in Troy, Michigan,
which was zoned for light industry but was nonconforming in
that there was a small residence on the property in violation of
the zoned use and there was a garage within fifty feet of the
front yard setback from John R Road. Four years later, the
Aslanians petitioned the City of Troy's Zoning Board of Ap-
peals to expand the nonconforming uses. The board of appeals
granted the requested variances but only on the condition that
the Aslanians use the residence as a home only temporarily
and that they not use the residence as a rental unit. Three
years later, the City of Troy filed a petition in Oakland Circuit
Court to acquire a twenty-seven-foot strip of the property for
the purpose of widening and improving John R Road. The
parties could not agree as to the value of the property taken,
and the matter was scheduled for trial. The Aslanians made a
motion in limine to exclude the city's appraisal and the testi-
mony of its appraiser because the appraisal was premised upon
allegedly unlawful action of the board of appeals in restricting
the Aslanians' use of the property as a personal residence only.
The court, Alice L. Gilbert, J., agreed and ordered that the
appraisal and the appraiser's testimony should be excluded at
the trial. The City of Troy appealed by leave granted.

The Court of Appeals *held:*

The conditions placed upon the Aslanians' property did not
constitute a forced dedication of their property so as to invali-
date any appraisals which consider those conditions in evaluat-
ing the property. The conditions were not so restrictive as to
constitute a forced dedication or confiscation of the land. Fur-
thermore, the Aslanians have taken full advantage of the
variances granted to them and should now be estopped from
challenging imposition of the conditions more than seven years

### REFERENCES

Am Jur 2d, Zoning and Planning §§ 178 *et seq.,* 260, 266 *et seq.*

Change in volume, intensity, or means of performing nonconform-
ing use as violation of zoning ordinance. 61 ALR4th 806.

after the fact. The trial court erred as a matter of law in finding that the conditions imposed upon the Aslanians' property constituted a forced dedication of the land. The court abused its discretion in excluding the testimony of the appraiser and the appraisal.

Reversed.

1. Zoning — Variances — Conditions.

The imposition of conditions appurtenant to a zoning variance is expressly authorized by statute if the conditions meet the requirements mandated in the statute; furthermore, the conditions must be reasonable, not arbitrary, unnecessary, or oppressive, must relate to the use of the land and not to the person by whom such use is to be exercised, and must be expressed with sufficient clarity to inform the applicant of the limitations upon the use of his land and to protect nearby owners (MCL 125.286d[2]; MSA 5.2963[16d][2]).

2. Zoning — Nonconforming Uses.

One of the goals of zoning is the gradual, but eventual, elimination of nonconforming uses so that the growth and development sought by the zoning ordinances can be achieved.

3. Zoning — Nonconforming Uses.

Nonconforming uses of property are permitted to continue in Michigan, without outright termination, in order to avoid hardship to the property owner; however, a zoning board need not permit a property owner to change the quality, intensity, or location of a nonconforming use, and when a change in a nonconforming use is contemplated, the zoning board may take advantage of that fact to compel a lessening or complete suppression of the nonconformity (MCL 125.583a[1]; MSA 5.2933[1][1]).

4. Zoning — Variances — Conditions — Estoppel.

A party who has accepted and retained the advantages of a variance granted on condition is estopped from attacking the propriety of the condition and will be deemed to have waived any error with respect to the imposition of the condition.

*John J. Martin, III,* for petitioner.

*Ackerman & Ackerman, P.C.* (by *Alan T. Ackerman*), for respondents.

Before: DANHOF, C.J., and MAHER and C. W. SIMON,* JJ.

PER CURIAM. Petitioner, the City of Troy, appeals by leave granted the order of the Oakland Circuit Court which barred the use of the city's appraisal of Joseph and Gail Aslanian's property in this eminent domain action. We reverse.

Sometime in 1975, the Aslanians (respondents) purchased a parcel of land in Troy, Michigan, which was zoned for light industry. The property was nonconforming in two respects: First, a small residence located thereon violated its zoned use; and second, a garage was within fifty feet of the front yard setback from John R Road, a major thoroughfare in Troy.

In March of 1979, respondents petitioned the city's Zoning Board of Appeals (ZBA) to expand the nonconforming uses. They requested permission to (1) expand the size of the garage, (2) park within forty-four feet of John R, and (3) encroach upon the side yard setback. On March 20, the ZBA granted respondents the three requested variances, but on the condition that they use the residence as a home on a temporary basis only and that they not use the residence as a rental unit in the future.

In August of 1982, the city filed a petition in the Oakland Circuit Court to acquire a twenty-seven-foot strip of the property which bordered John R. The city sought the property for the purpose of widening and improving the thoroughfare. MCL 213.361 *et seq.*; MSA 8.261(1) *et seq.* Because the parties could not agree as to the value of the property taken, the matter was scheduled for a jury trial.

Shortly before trial, respondents filed a motion

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in limine to exclude the city's appraisal and the testimony of its appraiser. The motion asserted that the evidence should be barred because it was premised upon the unlawful action of the zba in March of 1979 which restricted respondents' use of the property as a personal residence only. Respondents claimed this constituted a forced dedication of the property and since the city's valuation of the land was based on this unlawful action the appraisal was invalid. After hearing the substance of the appraiser's testimony, the court ruled that both the testimony and the appraisal should be excluded at trial. The court made no findings of fact on the issue, but stated only:

> It is the Court's decision that the appraisal prepared by Mr. Kleinert be excluded from the evidence in this trial for the reason that it's a [sic] basic premise in arriving at a cost and income approach is based upon his acceptance of a patently invalid action which amounts to a forced dedication of the owners' property without just compensation. So, therefore, the Court grants the Motion.

From that ruling, the city applied for, and was granted, leave to appeal. The sole issue presented for our consideration is a legal one: Whether the conditions placed upon respondents' property constituted a forced dedication thereof so as to invalidate any appraisals which consider those conditions in evaluating the property. We answer that issue in the negative.

The authority of township zbas to grant variances and impose conditions on land use is embodied in MCL 125.293; MSA 5.2963(23), which provides in pertinent part:

> Where there are practical difficulties or unneces-

sary hardship in the way of carrying out the strict letter of the zoning ordinance, the board of appeals in passing upon appeals may vary or modify any of its rules or provisions so that the spirit of the ordinance is observed, public safety secured, and substantial justice done. *The board of appeals may impose conditions with an affirmative decision pursuant to [MCL 125.286d(2); MSA 5.2963(16d)(2)].* [Emphasis added.]

MCL 125.286d(2); MSA 5.2963(16d)(2), referred to above, states:

Reasonable conditions may be required with the approval of a special land use, planned unit development, or other land uses or activities permitted by discretionary decision. The conditions may include conditions necessary to insure that public services and facilities affected by a proposed land use or activity will be capable of accommodating increased service and facility loads caused by the land use or activity, to protect the natural environment and conserve natural resources and energy, to insure compatibility with adjacent uses of land, and to promote the use of land in a socially and economically desirable manner. Conditions imposed shall meet all of the following requirements:

(a) Be designed to protect natural resources, the health, safety, and welfare and the social and economic well being of those who will use the land use or activity under consideration, residents and landowners immediately adjacent to the proposed land use or activity, and the community as a whole.

(b) Be related to the valid exercise of the police power, and purposes which are affected by the proposed use or activity.

(c) Be necessary to meet the intent and purpose of the zoning ordinance, be related to the standards established in the ordinance for the land use or activity under consideration, and be necessary to insure compliance with those standards.

Hence, the imposition of conditions appurtenant to a zoning variance is expressly authorized by statute if they meet the requirements enumerated in MCL 125.286d(2); MSA 5.2963(16d)(2). See *Whittaker & Gooding Co v Scio Twp,* 122 Mich App 538; 332 NW2d 527 (1983), lv den 417 Mich 1100.13(1983). Additionally, other authorities have held that conditions must be reasonable, not arbitrary, unnecessary, or oppressive, and they must relate to the use of the land and not to the person by whom such use is to be exercised. 101A CJS, Zoning & Land Planning, § 238, p 690. Furthermore, the conditions must be "expressed with sufficient clarity to inform the applicant of the limitations upon the use of his land and to protect nearby owners." 3 Anderson, American Law of Zoning (3d ed), § 20.65, pp 578-579.

One of the recognized goals of zoning is the gradual, but eventual, elimination of nonconforming uses so that the growth and development sought by the ordinances can be achieved. *Nat'l Boatland, Inc v Farmington Hills Zoning Bd of Appeals,* 146 Mich App 380, 385; 380 NW2d 472 (1985); *Norton Shores v Carr,* 81 Mich App 715, 720; 265 NW2d 802 (1978). In this state, nonconforming uses are permitted to continue, without outright termination, in order to avoid hardship to the property owner. *Redford Moving & Storage Co v Detroit,* 336 Mich 702, 711; 58 NW2d 812 (1953). See also MCL 125.583a(1); MSA 5.2933(1)(1); *De Mull v City of Lowell,* 368 Mich 242, 250-253; 118 NW2d 232 (1962). However, the zoning board need not permit the property owner to change the quality, intensity, or location of the nonconforming use. 1 Anderson, American Law of Zoning (3d ed), §§ 6.37-6.39, pp 561-569. See also, *Nat'l Boatland, Inc, supra,* p 386. When a change in a nonconforming use is contemplated, the zoning board may

take advantage of that fact to compel a lessening or complete suppression of the nonconformity. *Nat'l Boatland, Inc, supra,* p 386.

In light of the aforementioned statutes and principles, we find that the conditions placed upon respondents' property were valid. The conditions concerned a legitimate zoning purpose, i.e., eventual cessation of nonconforming uses. The conditions also only restricted the nonconforming use to its present state. They did not seek to terminate the nonconforming use. Additionally, they related to the use of the land (i.e., limitation on use as rental property) and were not restrictive as to respondents personally. Finally, it is undisputed that the conditions were clearly expressed and the respondents understood the limitations placed on their property. In summary, the conditions imposed upon respondents' property were a proper exercise of the city's zoning power.

Contrary to what respondents assert, the conditions were not so restrictive as to constitute a forced dedication or confiscation of the land. The conditions did not so limit the use of the property that all feasible uses were proscribed. Nor did they render the property unusable for any purpose permitted by the applicable zoning restrictions. 1 Anderson, American Law of Zoning (3d ed), § 3.27, pp 167-169. Rather, the conditions permitted not only the zoning restriction in effect at the time respondents purchased the property (i.e., light industry) but also permitted a nonconforming use as well. The only restriction placed upon respondents was that they could not rent the property out as a residence. This did not rise to the level of a forced dedication or confiscation.

It is also important to note that respondents have apparently taken full advantage of the vari-

ances granted to them by the city while now attempting to avoid the conditions thereon.

> A party who has accepted and retained the advantages of a variance granted on condition is estopped to attack the propriety of the condition and will be deemed to have waived any error with respect to the imposition of the condition. [101A CJS, Zoning & Land Planning, § 238, p 691.]

We therefore hold that respondents should be estopped from challenging imposition of the conditions more than seven years after the fact and after having taken full advantage of the variance.

For all the above-mentioned reasons, the trial court erred as a matter of law in finding that the conditions imposed upon respondents' property constituted a forced dedication of the land. Instead, it was a proper exercise of the city's zoning power. Consequently, an appraisal which evaluates the property in light of the conditions placed thereon is valid. The court abused its discretion in excluding that evidence.

Because of our disposition of the primary issue, we decline to address the city's evidentiary claim as unnecessary. We also decline to decide the city's claim regarding the applicable statute of limitations since it was not ruled on below.

Reversed.